UNITED STATES, Appellee

v

ISAIAH D. SINGLETARY, Airman Second Class, U. S. Air Force, Appellant

14 USCMA 146, 33 CMR 358

No. 16,687

July 26, 1963

*Lieutenant Colonel Quincey W. Tucker, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Major James Taylor, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened by the Commander, Fifteenth Air Force, at Malmstrom Air Force Base, Montana, the accused was found guilty of committing a lewd act upon the body of N, a female under the age of sixteen years, with intent to arouse his sexual desire. He was sentenced to bad-conduct discharge, confinement at hard labor for three years, and reduction to Airman Basic. The convening authority approved the sentence. The board of review affirmed only so much of the findings of guilty as included an assault and battery upon a child under the age of sixteen years and, reassessing the sentence, reduced accused's punishment to bad-conduct discharge, confinement at hard labor for eighteen months, and reduction to Airman Basic. We granted Singletary's petition for review on the following issues:

"A. THE COMPETENT EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE BOARD OF REVIEW'S AFFIRMANCE OF A CONVICTION OF ASSAULT AND BATTERY, THERE BEING NO EVIDENCE OF CRIMINAL INTENT OR MENS REA.

"B. UNDER THE CIRCUMSTANCES OF THIS CASE, THE BOARD OF REVIEW ERRED AS A MATTER OF LAW IN ITS CONCLUSION THAT THE TESTIMONY OF ACCUSED '. . . AMOUNTS TO A JUDICIAL CONFESSION TO AN ASSAULT AND BATTERY UPON THE CHILD,' UPON WHICH ACCUSED'S CONVICTION OF THAT OFFENSE COULD BE FOUNDED (Decision of B/R, p. 18).

"C. THE BOARD OF REVIEW ERRED IN AFFIRMING A CONVICTION OF ASSAULT AND BATTERY ON THE BASIS THAT ACCUSED, '. . . WITHOUT ANY LEGAL JUSTIFICATION OR EXCUSE, USED MORE FORCE THAN WAS NECESSARY UNDER THE CIRCUMSTANCES,' FOR IT IS NOT THE AMOUNT OF FORCE USED BUT THE UNLAWFUL APPLICATION OF FORCE, WHICH ESTABLISHES THE CRIME."

The three issues quoted above essentially involve the propriety of the board of review's affirmance of assault and battery upon a minor child in light of its conclusion that accused had judi-

cially confessed to that offense. The board found that prejudicial error occurred at the trial when the victim, N, a seven-year-old girl, was not sworn before testifying concerning the foundation for the charge against accused. Indeed, it pointed out defense counsel's objections to her competency and trial counsel's declaration that he would stipulate N could not understand the nature of an oath. The board, however, concluded it might purge the error of harmful effect by affirming the lesser included offense of assault upon a minor child under the age of sixteen years. It reached its decision on the basis that accused had judicially confessed to this offense. In so doing, it used the following language:

"In our opinion, a judicial confession by the accused is present in the instant case. The accused testified, *inter alia,* that on the date alleged he 'baby-sat' N— at the request of the child's mother. During the evening, he fell asleep on a couch in the living room. When he awoke, N— was hitting the accused's two-year-old son. Upon seeing this, he lost his temper and struck N—. The force of the blow caused N— to hit the lower part of her body on the arm of the couch. N— told him that 'she hurt down there.' The accused took her pants down and saw a spot of blood on her private parts. He wiped off the blood with his finger and put vaseline on her to stop the bleeding. He then testified 'the light in the livingroom [sic] wasn't bright enough for me to see, so I took her in the bathroom to see where the blood was coming from, and I put grease on my finger and stuck my finger up and that is when the blood started coming down, so I took my cook shirt and started wiping the blood.' In relation to the insertion of his finger, the accused stated that it was his index finger and he had inserted it 'to approximately the second knuckle of my finger.'

"The accused specifically denied that he attempted to perform a sexual act with the girl or that he had any intent to arouse his sexual desires. He also denied any intentional exposure of his private parts to the girl, although he admits that she could have seen his private parts on two different occasions when she and his son later entered the bathroom which was being utilized by the accused. He did not tell the child's mother or his wife of the child's injury because he did not know what the child's father 'might do because I hit her and wouldn't understand the reason I put my finger in.' The defense also introduced a pretrial statement of the accused into evidence. The accused testified that the pretrial statement was true and, in effect, adopted it as part of his trial testimony. The pretrial statement is consistent with the accused's trial testimony on all material matters.

"The law is well settled that the offenses of indecent or lewd acts with another, in violation of Article 134, Uniform Code of Military Justice, and assault and battery upon a child under the age of sixteen years, in violation of Article 134, Uniform Code of Military Justice, are lesser included offenses to the offense charged (U. S. v Gaskin, 12 USCMA 419, 31 CMR 5; U. S. v Cudd, 6 USCMA 630, 20 CMR 346). *At the very least, the accused's testimony here amounts to a judicial confession to an assault and battery upon the child. The internal exploration of this young girl's vagina by this professionally unqualified male accused was clearly an assault and battery which could not possibly be justified on the basis of his status as a 'babysitter.' In other words, the accused, without any legal justification or excuse, used more force than was necessary under the circumstances (MCM, 1951, par. 207a).* Such assault and battery is clearly embraced within the terms of the approved findings of the court that he 'fondled' the victim and 'placed his hands upon her private parts.' We conclude that the receipt into evidence of the incompetent evidence could have had no effect with regard to that offense." [Emphasis supplied.]

In sum and substance, then, the board affirmed the findings of guilty of

the lesser included assault and battery upon N on the basis that accused's examination of her privates in order to determine the manner of her injury constituted, in law, an in-court confession of his guilt of that offense. We cannot agree.

The offense which the board of review sought to affirm requires proof that the accused, with ██ *lawful* force and violence, invaded N's bodily integrity. An examination of a child in order to determine the extent of her injuries conducted by one under whose care and control she has been placed does not constitute the use of *unlawful* force and violence. As noted by one authority:

"The act of touching must be unlawful to constitute a battery. No offense is committed if the defendant has acted under a privilege to commit a battery in defense of person or property; in administering reasonable discipline to a child as a parent or teacher; or in effecting a lawful arrest. It has also been held that no battery is committed when the person is touched in a reasonable effort to save him from danger." [1 Wharton, Criminal Law and Procedure, § 340, pages 688–689 (1957).]

And, as is noted in 6 Am Jur 2d, Assault and Battery, § 21:

"As a general rule, a beneficent intent, that is, an intent to act in the interest and for the benefit of the alleged victim, ordinarily excludes criminal liability for what otherwise would have been an assault, or an assault and battery."

See also 6 CJS, Assault and Battery, §§ 63, 70, 71; Miller, Handbook of Criminal Law, § 101 (1934) ; and Clark and Marshall, A Treatise on the Law of Crimes, 6th ed, § 10.19.

In the leading case of State v Hemphill, 162 NC 632, 78 SE 167, 45 LRA (New Series) 455 (1913), the Supreme Court of North Carolina considered a situation analogous to that before us. There, the defendant testified that he found his alleged victim, a female, in the woods with two men. He " 'took hold of her to carry her to her grandmother.' " When she freed herself, the defendant "went and told her grandmother where she was." In holding the trial judge erred in charging the jury that, if they believed defendant's own testimony, they should find the defendant guilty, Judge Walker declared, at page 457:

"It may be true that every touching of the person of another, however slight or trifling the force may be, if done in an angry, rude, or hostile manner, will constitute an assault and battery, but not so if there was no intention to hurt or injure, and it was so understood by the other party. . . .

"If we are restricted to the defendant's testimony, it would appear, or at least there is reason for saying, that he did not intend to injure the prosecutrix, or to do any violence to her person, or to restrain her of her liberty against her will. The jury may reasonably conclude that his object was one of persuasion rather than coercion. He saw her plight, perhaps had been informed of it by her grandmother, and wished to relieve her of its evil consequences. If so, it was an act of kindness and mercy to her, rather than one of hostility. *If he laid his hand upon her gently for the purpose of inducing her to return to her home, and quit the company or association of designing men, and did not seize her with anger or rudeness, it surely would not be an assault in law.*" [Emphasis supplied.]

To the same effect is Jordan v State, 84 SW 823 (Texas) (1905), wherein the Court of Criminal Appeals set aside defendant's conviction of assault, based on evidence that he had committed the crime while assisting his father who suffered an attack of locomotor ataxia. The court noted, at page 823:

". . . While it may be true, under the state's theory, that appellant was not as considerate and gentle in the handling of his father as one more humane or tender might have been, yet we do not think the evidence indicates such an intent to

**149**

injure as would justify this court in affirming the judgment of the lower court and permitting the verdict to stand."

See also Armstrong v State, 51 Okla Crim 407, 2 P2d 100 (1931).

The essence of the foregoing authorities is that assault and assault consummated by a battery involve a general criminal intent, actual or apparent, to inflict violence or harm upon another. United States v Norton, 1 USCMA 411, 4 CMR 3. It is but a specific application of the maxim *actus non facit reum, nisi mens sit rea.* Cf. United States v Hayes, 8 USCMA 627, 25 CMR 131; United States v Roark, 12 USCMA 478, 31 CMR 64. And it is the absence of this mental element—as demonstrated by the accused's testimony—which should have been recognized by the board of review as precluding it from treating such to be a judicial confession. Undoubtedly, accused admitted the acts of touching, but he also declared that he did such acts only for the purpose of examining an apparent injury to the child in order to determine its extent.

Accused's stated purpose was beneficent and intended to aid the child rather than to offer it harm. Thus, rather than constituting a judicial confession, his testimony was entirely exculpatory. State v Hemphill, supra; Jordan v State, supra; 6 Am Jur 2d, supra, § 21; Annotation, 45 LRA (New Series) 455. Nor could the board properly consider his admission as to the acts involved without also accepting the concomitant explanation of his mental state in committing them. Cf. United States v Kuefler, 14 USCMA 136, 33 CMR 348. One is as much an element of the offense sought to be affirmed as the other, and reliance upon a judicial confession to purge error necessarily means taking accused's testimony as a whole to determine if he has, in court, admitted his guilt of every part of the crime. United States v Trojanowski, 5 USCMA 305, 17 CMR 305. That is not the case here, and we hold that the board of review erred in affirming findings of guilty of as-

sault consummated by a battery upon a child under the age of sixteen years rather than to order a rehearing on the charge of which accused had been found guilty.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered on the original Charge.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

I seriously question the conclusion that this accused's testimony does not constitute a confession of guilt. The accused admitted he penetrated the child's vaginal area up to "the second knuckle" of his index finger. He said he did so because the child was bleeding as a result of a fall against the arm of a couch and he wanted to find out where "the blood had come from." He testified he didn't say anything to the child's parents about the matter because he didn't think they "would understand . . . [his] reason for putting . . . [his] finger into . . . [the child's] privates." In my opinion, no one would accept this explanation. It is utterly incredible! Be that as it may, I specifically disagree with my brothers for two reasons not mentioned by them.

First, the board of review erred as a matter of law in holding the child's testimony inadmissible. The child promised to tell the truth and not to lie; and said she would be punished if she lied. I don't know what else can be required of a seven-year-old witness. But, assuming a ritualistic formula of oath or affirmation is required, there was a manifest waiver of the formula by defense. Defense counsel made no objection to allowing the child to testify without the formula; he cross-examined the child at length; he called the child's school teacher to testify to difficulties she had at school; he introduced evidence to bolster his "defense" that the child's account was a fabrication concocted by her mother who wanted to injure the accused because she had a "few arguments and stuff like that" with

150

him. And, in his final argument, he contended the child could not be believed because of purported discrepancies between her statement to the doctor, who examined her after the incident, and her trial testimony. Speaking of an identical situation, the Court of Appeals for the District of Columbia Circuit said:

"Appellants objection to the action of the court in permitting the witness to testify without being sworn is raised for the first time on this appeal. Moreover, it is neither contended on this appeal, nor does the record suggest, that the fact was not known to appellant early enough so that he could have made timely objection. Under the circumstances, it comes too late. As was said by the Supreme Court of Nebraska: '* * * we are of the opinion that the irregular administration of the oath to a witness, or the taking of testimony without an oath at all, must, if known to the adverse party, be objected to at the time. He may not, with knowledge of the irregularity, permit the trial to proceed, and raise the question after verdict.' This is the uniform rule." [Beausoliel v United States, 107 F2d 292, 294 (CA DC Cir) (1939).]

The competency of a witness and the administration of an oath or affirmation are two different things. The board of review held that the preliminary examination of the child established she was competent to testify as a witness. It concluded that defense counsel's objection to competency included an objection to the failure to observe the formula of the oath.[1] The record does not support the conclusion. After the child completed her testimony and withdrew from the courtroom, the following colloquy between defense counsel and the law officer was held:

"DC: Mr. Law Officer, did the record properly show I was making an objection to her?

"LO: To her competency?

"DC: Yes, and you made a determination.

"LO: Right."

Secondly, as much as I abhor and condemn the acts of the accused, I believe we should merely affirm the decision of the board of review. The board of review approved lesser findings of guilty on erroneous principles of law. Had The Judge Advocate General certified the correctness of the board's action to this Court, we would be justified in returning the record of trial to the board of review for reinstatement of the court-martial's findings. But the case comes to us on petition of the accused. In a petition case, we have not favored a disposition which would leave the accused in a worse position than when he appealed. United States v Dean, 7 USCMA 721, 23 CMR 185. Consequently, although the decision of the board of review represents a windfall to the accused, I would affirm it.

---

[1] As far as the record shows and the appellate briefs indicate, defense counsel may have been fully aware of the fact the child was not formally asked to swear or affirm to the truth of the testimony she would give. If defense counsel had such awareness, his tactic in remaining silent would preclude raising the issue on appeal. As we pointed out in United States v Wolfe, 8 USCMA 247, 250, 24 CMR 57, "A criminal trial is not a guessing game. An accused, alike with the Government, must deal fairly with the court. He cannot withhold information of matters affecting the trial on the chance that they may have a favorable effect, and then, when disappointed, complain." Even lacking such specific awareness, the nature of the error is such that the point is not preserved for appeal in the absence of a failure to object at trial. Wilcoxon v United States, 231 F2d 384 (CA 10th Cir) (1956), cert den, 351 US 943, 100 L ed 1469, 76 S Ct 834 (1956).